# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **Fidelity and Deposit Company** ) | |
| **of Maryland,** ) | |
|      **Appellant,** ) | |
| ) | Case No. 19 C 389 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| **TRG Venture Two, LLC,** ) | |
|      **Appellee.** ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Bankruptcy Court's order on TRG's motion to enforce is vacated, and the case is remanded for further proceedings consistent with this opinion.

## STATEMENT

### I.   Background

The instant bankruptcy appeal comes after years of litigation, dozens of filings, and hundreds of hours of state and federal-court consideration. A simplified version of the facts is as follows. Kimball Hill, Inc. ("KHI"), a residential construction company, owned the five undeveloped properties at issue (the "Properties"), which are located in five different municipalities in Illinois. Anticipating development of subdivisions on the Properties, KHI entered into Annexation Agreements with the municipalities to construct improvements on the land, such as sidewalks, curbs, and sewers. Pursuant to the Annexation Agreements, KHI obtained surety bonds from Fidelity and Deposit Company of Maryland ("F&D"), the appellant in this case, to secure KHI's performance.

KHI filed for liquidation under Chapter 11 of the Bankruptcy Code in April 2008. F&D filed proofs of claim in the bankruptcy proceeding and, on March 12, 2009, the Bankruptcy Court entered a Confirmation Order confirming KHI's liquidation plan. F&D accepted the terms of the Plan. The Plan Release provided that claimholders voting to accept the Plan "shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released the Debtors . . . and the Released Parties from any and all Claims." The Plan also includes a section entitled "Miscellaneous," which provides that "[t]he right, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any . . . successor or assign . . . . of each Entity." The Confirmation Order and Plan enjoined all parties subject to the Plan Release from pursuing a released claim against a party covered by the Plan Release.

TRG Venture Two, LLC ("TRG") acquired the Properties from a third-party entity that

had purchased them from the bankruptcy trust; TRG thus became responsible for the obligations under the Annexation Agreements that KHI had previously entered into with the Municipalities. Certain of the Municipalities filed suit in state court, seeking performance under the Annexation Agreements from TRG directly and F&D as the surety. In the state-court lawsuits, F&D filed counterclaims or third-party claims against TRG, alleging that, in the event F&D was found liable as a secondary obligor, TRG was liable to F&D under theories of indemnity and/or unjust enrichment. While TRG initially obtained dismissal of F&D's claims against it, these dismissals were reversed on appeal. *See, e.g., Vill. of Montgomery v. Fid. & Deposit Co. of Md.*, No. 2–15–0571, 16 WL 1621971, at *7 (Ill. App. Ct. Apr. 21, 2016) (concluding that "where TRG assumed KHI's obligations under the annexation agreement . . . and those obligations were the basis for the surety bonds, a suretyship relation arose as a matter of law, and TRG owes [F&D] a common-law duty to perform its obligations and to hold [F&D] harmless from its failure to do so.").

Subsequently, after six years of state-court litigation, TRG filed in Bankruptcy Court a Motion for Entry of an Order Enforcing Confirmation Order, asserting for the first time that the Plan Injunction barred F&D's state-law claims for indemnity and unjust enrichment. The Bankruptcy Court granted the motion, finding that in consenting to the Confirmation Plan, F&D had released its state-law claims against TRG, and awarded $9,539,768.54 in damages to TRG. F&D now appeals the Bankruptcy's Court's ruling, asserting several bases of error.

## II. Analysis

### A. Jurisdiction

The Confirmation Order includes a provision stating that "the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan . . . , including jurisdiction to: . . . [e]nter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan . . . ." (Appellant's Ex. 6, Dkt. # 30-1, ¶ 58, FD0104-05.) The Plan includes the same provision, and F&D voted in favor of the Plan. *In re Kimball Hill, Inc.*, No. 13 C 07146, 2014 WL 5615650, at *4 (N.D. Ill. Nov. 4, 2014).

F&D first contends that the Bankruptcy Court lacked subject-matter jurisdiction over the motion under 28 U.S.C. § 1334(b), which confers on a bankruptcy court, after a referral by the district court under § 157, "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." According to F&D, the Court lacks related-to jurisdiction. As the Seventh Circuit has recently stated, "the related-to jurisdiction must be assessed at the outset of the dispute, and it is satisfied when the resolution has a potential effect on other creditors." *Bush v. United States*, No. 16-3244, 2019 WL 4565106, at *5 (7th Cir. Sept. 20, 2019).

However, as noted by TRG, the Bankruptcy Court also concluded that it had jurisdiction

to enforce its own orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."). *See also In re Bateman*, No. 8:14-BK-5369-RCT, 2019 WL 4644385, at *1 (M.D. Fla. Sept. 24, 2019) ("[A] bankruptcy court, like any court, retains the inherent power to enforce an order. Although begun by a party, a contempt proceeding is 'at all times an action of the court.'") (citation omitted). Thus, the Court finds that the Bankruptcy Court had subject-matter jurisdiction over TRG's motion to enforce.

F&D next contends that even if the Bankruptcy Court has subject-matter jurisdiction, it should have permissively abstained. "Permissive abstention, which is governed by 28 U.S.C. § 1334(c)(1), allows bankruptcy courts to abstain from hearing a particular proceeding in the interest of justice, in the interest in comity with state courts, or due to concerns regarding respect for state law." *In re Heotis*, No. 17 C 00886, 2018 WL 1534970, at *4 (N.D. Ill. Mar. 29, 2018). "The party seeking permissive abstention has the burden of proving by a preponderance of the evidence that abstention is appropriate." *Id*. "[F]ederal courts generally should exercise their jurisdiction if properly conferred and . . . abstention is the exception rather than the rule." *Id*. at *5 (internal quotation marks and citation omitted). Twelve factors a bankruptcy court should consider in deciding whether to abstain include the following:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Chi., Milwaukee, St. Paul & Pac. R.R.*, 6 F.3d 1184, 1189 (7th Cir. 1993) (quoting *In re Eastport Assocs.*, 935 F.2d 1071, 1075-76 (9th Cir. 1991)). Here, the Bankruptcy Court considered these factors and found that most pointed in favor of keeping the case. In particular, it noted that the relevant issue it had to decide was "whether F&D's claims were treated under the Plan and covered by the release and Injunction," which is "not predominately a state law question," rather, it is one that the Bankruptcy Court "takes up quite often."

The Court finds no error in the Bankruptcy Court's consideration of the matter or its decision not to abstain from ruling on a a motion to enforce its own order.

    B.    <u>Interpretation of the Plan</u>

F&D next argues that the Bankruptcy Court erred in concluding that the Plan Release applied to TRG or F&D's claims. "A bankruptcy court's interpretation of a plan it confirmed is subject to full deference as an interpretation of its own order and may be overturned only if the record shows an abuse of discretion in the interpretation." *In re Airadigm Commc'ns, Inc.*, 547 F.3d 763, 768 (7th Cir. 2008) (citing *In re Weber*, 25 F.3d 413, 416 (7th Cir. 1994)).

In its ruling, the Bankruptcy Court referred to TRG as a "successor or assign," and at another point, as an "intended but unnamed beneficiary." The Bankruptcy Court further stated that F&D did not raise TRG's status as a successor, noting that F&D does not "challenge the nature, breadth, and/or depth of th[e] Plan Injunction or TRG's status as a successor." (Appellant's Br., Ex. 1, Dkt. 30-1, 3/20/17 Mem. Decision, FD0015.) In the section addressing whether F&D's claims against TRG were subject to the Release and Injunction, the Bankruptcy Court elaborated on TRG's status as a successor:

> Here, the Plan released all claims against the Debtor, with such term adopting the definition of claims in the Bankruptcy Code. There is no question that the parties were aware of the possibility of future claims against F&D on the Performance Bonds based on performance of the Annexation Agreements by the successors to the Debtors. Those future claims are claims within the meaning of section 101(5) [of the Bankruptcy Code] and thus are also within the meaning of Claims under the Plan.
>
> Not only did the Plan expressly include successors to the Debtors as beneficiaries of the Release and Plan Injunction, but the entire structure of the Plan as a plan of liquidation called for exactly what has happened here. When a debtor is in liquidation, it is a foregone conclusion that any future performance on the Debtors' obligation will not be by the Debtor, but by some other party.
>
> . . .
>
> . . . The amount of the F&D [state-law] Claims asserted by F&D was far in excess of amounts actually paid by it to date, and clearly sought recovery on future payments under the Performance Bonds, including by necessity in a liquidating case those future payments resulting from the nonperformance of the Debtors' successors and assigns.

(*Id.*, FD0017-FD0018.) The Bankruptcy Court further noted that "F&D voluntarily subjected itself to the Release and the Plan Injunction by voting in favor of the Plan. . . . [which] expressly protected not only the Debtors and the KHI Trust, but also the successors thereto and assigns thereof." (*Id.*, FD0018.)

F&D subsequently filed a motion to alter or amend the Bankruptcy Court's ruling, arguing in part that TRG was not covered by the Release because it was not a successor. On July 5, 2017, the Bankruptcy Court heard oral argument on the motion and immediately thereafter

4

stated its ruling in open court. As is relevant here, the Bankruptcy Court rejected F&D's argument that TRG was not a successor pursuant to the Plan and Injunction,[1] stating in part as follows:

> [F&D's] second argument has to do with this issue of successors, and I alluded to that . . . a moment ago. And let's start with – it seems to me that this argument is a bit of revisionist history here, that F&D argues that this issue was never raised. That's simply untrue. The - TRG's motion, the very first line of the motion begins, "TRG Venture Two, LLC (purchaser), as successor to the KHI Post-Consummation Trust, hereby moves" – the issue of what is a successor –now, you can split hairs about what successor means, but the time for splitting hairs was when this issue was before the Court. . . . . [Y]ou don't get to sit back and wait for the Court's ruling and then decide that you can slice the ruling in a way that makes it more beneficial to you. That's not the way reconsideration works. If an issue is before the Court, it's before the Court, and this issue very clearly was before the Court.
>
> And here's the part that I think is a little bit disingenuous, and that is this. F&D, with respect to the first argument [in its motion to alter and amend], the argument of claims acquired by assignment, refers to the December 14 [, 2016] transcript. You only need to spend a few minutes with the December 14th transcript to realize the issue of successor was all over that hearing . . . . TRG's counsel argued at that hearing, ["]TRG is the successor to KHI, it stepped into KHI's shoes.["] The language . . . couldn't be clearer with respect to that. So, . . . to the extent that F&D is looking back to that hearing and saying, well, we raised things at this hearing, therefore, they were properly before the Court, and then arguing . . . that this [successor issue] was not properly before the Court, that's a bit disingenuous.
>
> But the fact is that I ruled on whether TRG was the successor based on my review of the documents that were before me, and everybody put the documents in front of me. They were all there. You were free to espouse whatever theory you wanted to on those documents, but if you have not done so, then that's your choice.

---

[1] The Court notes that F&D's motion to alter and amend with respect to this issue includes no citations to supporting authority for its position.

(Appellee's App'x, Ex. 70. Dkt. # 13-32, TRG01248-01250.)[2]

Based on the Bankruptcy Court's informed and considered rulings as stated above, the Court cannot find that it abused its discretion in interpreting the Plan to include TRG as a successor under the Plan.

F&D next challenges the Bankruptcy Court's determination that the claims it asserted in state court are enjoined by the Plan language. As indicated above, the Bankruptcy Court found that the claims brought by F&D were included as part of the Plan and Injunction, noting at the outset that, in the Bankruptcy Code, Congress "adopt[ed] the broadest available definition of 'claim,'" and it is this definition to which the Plan refers in defining "claim." (Appellant's Br., Ex. 1, Dkt. 30-1, 3/20/17 Mem. Decision, FD0016) (citation omitted). The Bankruptcy Court went on to state: "That the breadth of the definition of claims in section 101(5) [of the Bankruptcy Code,'] would include the future claims of sureties is not a new concept in the courts." (*Id.*) After reviewing the relevant caselaw, the Bankruptcy Court concluded:

> Here, the Plan released all claims against the Debtor, with such term adopting the definition of claims in the Bankruptcy Code. There is no question that the parties were aware of the possibility of future claims against F&D on the Performance Bonds based on performance of the Annexation Agreement by successors to the Debtors. Those future claims are within the meaning of section 101(5) [of the Bankruptcy Code] and thus are also within the meaning of Claims under the Plan.
>
> ...
>
> . . . The amount of the F&D Claims asserted by F&D [in state court] was far in excess of amounts paid by it to date, and clearly sought recovery on future payments under the Performance Bonds, including by necessity in a liquidating case those future payments resulting from the nonperformance of the Debtors' successor and assigns. F&D extensively litigated the F&D claims in this court and the District Court and bargained for and received the right to augment its allowed claim with future amounts paid by it. F&D cannot now in good faith claim that it was not aware of the Plan's effect on the very claims it asserted.

(*Id.*, FD0018.)

In arguing that the Bankruptcy Court erred, F&D points to the Illinois Appellate Court's holdings that F&D had suretyship, indemnification, and/or unjust enrichment claims against TRG. However, as the Bankruptcy Court notes, and F&D acknowledges, the state courts did not address the issue of the release. *Id*. ("What is missing in the Illinois Appellate Court's analysis

---

[2] In essence, the Bankruptcy Court is relying, at least in part, on F&D having waived its challenge as to whether TRG is a successor under the Plan. The Court finds no basis for error in this conclusion.

is the central point here, that F&D agreed to a release of all of its indemnification rights against the Debtors and is enjoined such rights against successors to the Debtors such as TRG."). Whether F&D's claims should have been dismissed at the motion-to-dismiss stage in state court and whether those claims were released by the Plan and Injunction are two separate inquiries. Thus, the Court rejects F&D's assertion that the Bankruptcy Court was bound by the Illinois Appellate Court's rulings with respect to whether F&D's claims were barred by the Plan Injunction.

For these reasons, the Court denies F&D's appeal as it relates to the Bankruptcy Court's interpretation of the Plan language by the Bankruptcy Court.

C. Finding of Contempt

F&D contends that the Bankruptcy Court applied the wrong standard in finding F&D in contempt of the discharge order when it filed the state-court cases against TRG. A contempt finding is reviewed for an abuse of discretion, and "[a] finding of civil contempt will only be reversed if it 'depends on faulty legal premises [or] clearly erroneous factual findings.'" *In re Taylor*, 793 F.3d 814, 818 (7th Cir. 2015) (citation omitted). As recently noted by a bankruptcy court in this district:

> A bankruptcy court may hold a creditor in contempt for violating the discharge injunction. *See, e.g., In re Taylor*, 793 F.3d 814, 817 (7th Cir. 2015). The United States Supreme Court has stated that the proper standard for civil contempt is an objective one. *Taggart v. Lorenzen*, — U.S.— 139 S. Ct. 1795, 1804, 204 L. Ed. 2d 129 (2019). "A court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Id*.

*In re Parkland Properties, LLC*, No. BR 13 B 22702, 2019 WL 3214384, at *12 (Bankr. N.D. Ill. July 16, 2019). The Supreme Court's decision in *Taggart* setting forth the standard was issued in June 2019, after the Bankruptcy Court's March 2017 liability ruling and several months after its January 3, 2019 damages ruling.

In determining the burdens and standard to be used in the instant case, the Bankruptcy Court stated that creditors "may be held in contempt if they willfully violated the injunction," and that such "burden is met by establishing that [the creditors] (1) had knowledge of the post-discharge injunction; and (2) intended the actions which violated the injunction." (Appellant's Br., Ex. 1, Dkt. 30-1, 3/20/17 Mem. Decision, FD0011) (citation omitted).) It is not clear whether the standard articulated in *Taggart* would alter the Bankruptcy Court's decision that F&D acted in contempt of its order. Thus, because the Bankruptcy Court did not expressly consider whether there was a "fair ground of doubt" as to whether F&D's conduct might be lawful, its order granting the motion to enforce is vacated and remanded for a determination of contempt under the standard articulated in *Taggart*.

**Conclusion**

For the reasons stated above, the Bankruptcy Court's order granting the motion to enforce is vacated and remanded. The Court expresses no opinion regarding what result the Bankrupcty Court should reach.

**Date:** October 16, 2019

_____
**Ronald A. Guzmán**
**United States District Judge**